## STAR BALL RETAINER CO. v. STRAUSS et al.

### (Circuit Court, S. D. New York. November 26, 1907.)

### No. 7,969.

PATENTS—INFRINGEMENT—BALL RETAINER.

    The Keiper patent, No. 686,617, for a ball-retaining device for ball bearings, as limited by the prior art, *held* not infringed.

In Equity. On final hearing.

Julian C. Dowell, for complainant.
Baxter Morton, for defendants.

PLATT, District Judge. The patent is to Keiper, No. 686,617. The claims in issue are 2 and 3:

"2. A ball retainer consisting of an annular base portion and a series of integral parts extending from one edge only of said base and having flaring portions arranged at an angle thereto, whereby suitable spaces are formed for receiving balls which are sprung into said spaces and confined between said parts.

"3. A ball retaining device for ball bearings, consisting of a ring-shaped portion or base having a series of standards springing axially from one edge thereof only and terminating in sector shaped or flaring angularly arranged flanges or extensions, whereby suitable spaces are formed for receiving and confining the balls between adjacent standards."

The defenses are that if the patent is properly construed there is no infringement; but, if found broad enough to cover defendants' device, the claims are invalid. Time forbids more than a word or two, which it is hoped may show the main reasons which lead me to my final conclusion. The state of the art of retainers for ball bearings at the time of Keiper's application for patent in suit and of Klahn's application, which latter led to a division, an interference with Keiper, stated by the Patent Office to be on claims 5 and 6, and issue of patent 611,689, October 4, 1898, based on earlier claims in Klahn's application, had been so well developed that it would be idle to search for anything of a pioneer character.

Narrow distinctions had become important. Keiper started with one idea, viz., lifting the standards from the inner portion of the circle and extending the bent portion outwardly with a flare. Klahn came along with two ideas, viz., lifting the standards from the inner portion of the circle and bending them outwardly with a flare, and also from the outer portion of the circle and bending them inwardly with a taper. After Klahn appeared Keiper tried to broaden his claims by taking advantage of both ideas. Whether he accomplished what he aimed at is problematical. He arranged the interference so that the standards are to issue from "one edge only" of the ring; but, after rising and bending over, the bent portion must flare. The only edge of the ring from which they can rise and flare after bending,

and form an operative retainer, is the inner edge. If they rise from the outer edge, they must inevitably taper after bending. The officials of the Patent Office must have seen a distinction, or a divisional portion of the Klahn application would not, while the interference was in progress, have been granted. This patent confronted Keiper while the interference was dragging its slow length along, and it is certain the testimony at the interference surrounded a contention over Klahn's device when the standards sprung from the inner portion of the ring. If he could have shown that his device had gone beyond experiment, he would have gained the priority which he sought.

Keiper's application was filed December 23, 1897. Defendants were then in control of three patents which show ball retainers made from one piece of metal, with a ring-shaped base from which standards projected, having ball-holding spaces between the standards into some of which the balls could be sprung or snapped. The device of the Dilg patent 'showed an inherent capacity for permitting the balls to be snapped into place. The Strauss patent (576,500) may be said to have blazed the path for the others, including the patent in suit, since these only show variations on the retainers shown in the Strauss patent. Now, when we look at complainant's patented retainer and defendants' alleged infringement, we find that the standards of the former arise from the inner edge of the ring and the standards of the latter from the outer edge. Complainant's expert admits that "each flange or extension of the complainant's retainer is narrowest where it joins the standard from which it is bent and thence flares, getting wider and wider," and that in defendants' retainer "each extension or flange is widest where it joins on to the standard and thence becomes narrower." It is true that at the very end it sometimes widens a little, but not necessarily so. The admissions are, to my mind, equivalent to saying that the angularly arranged portions of defendants' retainer are tapering, instead of flaring or sector-shaped, as required by the claims of the patent in suit. The Patent Office evidently considered the difference of construction fundamental, and I am forced to the same conclusion.

If the prior state of the art permitted any stretch of the doctrine of equivalents, the point might be debatable; but to my mind, as the situation stood at the time of the patent, an angular extension, coming from a standard which is built up from the larger circle and tapers after it turns, is not the same thing as a standard which is built up from a smaller circle and flares after it turns. They are fundamentally different constructions. This view of the case makes the motions entered and the question of res adjudicata academic.

The conclusion reached calls for a dismissal of the bill. It is so ordered.